**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| TROY TRUE, individually and as guardian of J.T., a minor, MARC MCFRAZIER and GWEN GOLDEN, for themselves and others similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 07-00770-CV-W-DW |
| CONAGRA FOODS, INC., ) ) | |
| Defendant. ) ) | |

# ORDER

Pending before the Court is the Plaintiffs' Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23 (Doc. 46). The Defendant filed suggestions in opposition (Doc. 60), and the Plaintiffs filed a reply (Doc. 61). Following leave of Court, the Defendant then filed a sur-reply brief (Doc. 65) and the Plaintiffs filed a sur-surreply (Doc. 67).[1] After reviewing the record and the parties' arguments, the Court DENIES the Plaintiffs' motion for class certification.

---

[1] The Defendant subsequently filed a Motion for Leave to Submit Supplemental Authority (Doc. 68), which Plaintiffs did not oppose (Doc. 69). Because this motion was not opposed, and because the Court considered Defendant's supplemental authority in rendering this decision, Defendant's Motion for Leave to Submit Supplemental Authority (Doc. 68) is GRANTED.

## I.[2]

### A.

Defendant ConAgra Foods, Inc. ("Defendant" or "ConAgra") is a Delaware corporation and its principal place of business is located in Omaha, Nebraska. Second Amended Class Action Complaint (the "Compl."), at ¶ 8. During the relevant time period, ConAgra manufactured beef, turkey, and chicken pot pies at its facility in Marshall, Missouri (the "Marshall facility"). Id. at ¶ 9; Plts.' Suggs. in Support (Doc. 47), p. 6. During its operation, the Marshall facility manufactures approximately 1,100 frozen pot pies per minute. See Plts.' Suggs. in Support, p. 18. The pot pies are then distributed and sold throughout the United States under the Banquet and other brand names. Compl. at ¶¶ 8, 26.

On or about October 8, 2007, the United States Department of Agriculture ("USDA") contacted ConAgra about a possible connection between salmonella and pot pies manufactured at the Marshall facility. Def's. Suggs. in Opp. (Doc. 60), p. 4. ConAgra responded by shutting down the Marshall facility on October 9. Compl. at ¶ 23. On that day, ConAgra also issued an advisory to consumers that had purchased Banquet turkey and chicken pot pies (as well as generic store brands) that bore the number "P-9" printed on the side of the package. Id. at ¶ 24. On October 11, 2007, and following discussions with the USDA and other agencies, ConAgra issued a voluntary recall "of all varieties of frozen pot pie products in commerce that may be linked to an outbreak of salmonellosis." Id. at ¶ 25; Def's. Suggs. in Opp., p. 4-5.

---

[2] The facts of this case are found within the parties' numerous (and voluminous) filings with the Court. This Order only discusses those facts relevant to the Court's rulings herein. Further, in ruling on the pending motion for class certification, "the Court must accept Plaintiffs' substantive allegations as true and not assess the likelihood of success on the merits." In re Aquila ERISA Litig., 237 F.R.D. 202, 207 (W.D. Mo. 2006).

The recall was broad in scope. It included all varieties of chicken, turkey, and beef pot pies distributed under various names. Compl. at ¶ 26. More specifically, the recalled pot pies were 7 ounce single serving frozen packages with the number "P-9" or "Est. 1059" printed on the side of the package. Id. at ¶ 27. These pot pies were allegedly distributed to stores throughout the United States, Puerto Rico, and the Caribbean islands. Id. As part of its consumer advisory and subsequent recall, ConAgra established a refund program. Def's. Suggs. in Opp., p. 5. A customer could return a pot pie by contacting ConAgra directly, or by contacting the retailer who sold the pot pie. Id. According to ConAgra, it has paid out approximately $8,460,000.00 in refunds. Id.

Salmonellosis is an infection associated with a bacterium known as salmonella. Compl. at ¶ 30. The common symptoms of a salmonella infection are diarrhea, fever, and abdominal cramps that occur 12 to 72 hours after infection. Id. That said, Plaintiffs acknowledge that "[m]any different kinds of illnesses can cause diarrhea, fever, or abdominal cramps. Determining that [s]almonella is the cause of the illness depends on laboratory tests that identify [s]almonella in the stools of an infected person." Id. at ¶ 32. There are also different types of salmonella, which may also be determined through testing. Id. at ¶ 31.

**B.**

The Plaintiffs' Second Amended Complaint seeks relief for harm allegedly caused by the tainted pot pies. In particular, the Plaintiffs assert five separate claims: Strict Liability (Count I), Negligence (Count II), Breach of Implied Warranty (Count III), Negligence Per Se (Count IV), and Unjust Enrichment (Count V). Each claim is grounded in state law.[3]

---

[3] Although grounded in state law, the negligence per se claim identifies alleged violations of the Federal Food, Drug and Cosmetic Act ("FDCA"), the Federal Meat Inspection Act ("FMIA"), and the Federal Poultry Products Inspection Act ("PPIA"). Compl. at ¶¶ 67-68.

3

In the pending motion, the Plaintiffs seek certification of two nationwide classes. The proposed "Injury Class" would include "[a]ll persons who consumed Defendants' [sic] Pot Pies subject to the October 11, 2007 recall and have suffered physical injuries."[4] Compl. at ¶ 38. The proposed "Consumer Class" would include "[a]ll persons who purchased and/or consumed Defendants' [sic] Pot Pies subject to the October 11, 2007 recall." Id.; see also Plts.' Suggs. in Support, at p. 16. The Plaintiffs estimate that 165,000,000 pot pies could be subject to the recall; consequently, Plaintiffs opine that there would be "thousands" of persons in each proposed class. See Plts.' Suggs. in Support, p. 18.

## II.

It is well-settled that a district court has "broad discretion to decide whether certification is appropriate . . . ." Rattray v. Woodbury Cnty., 614 F.3d 831, 835 (8th Cir. 2010). As such, the denial of class certification is reviewed for abuse of that discretion. Id.; see also Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1145 (8th Cir. 1999). Class certification is not lightly granted; the district court must engage in a "rigorous analysis to ensure that the prerequisites [for class certification] are satisfied." Elizabeth M. v. Montenez, 458 F.3d 779, 784 (8th Cir. 2006) (quotations omitted). Those prerequisites are set forth below.

## A.

A party seeking class certification bears the burden of satisfying the two-step analysis set forth by Federal Rule of Civil Procedure 23. See Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994)

---

[4] In subsequent briefing, Plaintiffs offered to revise the proposed Injury Class to "[a]ll persons who, on or before October 11, 2007, consumed Defendant's Pot Pies subject to the October 11, 2007 recall and who assert or allege claims sounding in personal injury therefrom." Plts.' Reply (Doc. 61), at p. 17. The Court agrees with the Defendant in that neither Injury Class is adequately defined. In particular, neither class is limited to alleged injuries resulting from salmonella and are broad enough to include, "for example, someone who claimed an injured tooth from a rock or other foreign object allegedly in a pot pie." Def's. Suggs. in Opp., p. 63.

4

(recognizing that "a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met"). First, Federal Rule 23(a) "sets out four threshold requirements that must be met before a plaintiff may file a lawsuit on behalf of a class of persons." Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010). Under Rule 23(a), the four threshold requirements for class certification are "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These prerequisites are known as the numerosity, commonality, typicality, and adequacy of representation requirements. See Casey v. Coventry Healthcare of Kansas, Inc., 2010 WL 3636140, at * 1 (W.D. Mo. Sept. 10, 2010).

Second, if Rule 23(a) is satisfied, the moving party must also satisfy at least one of three available options under Rule 23(b). Here, the Plaintiffs rely on Rule 23(b)(3) for both proposed classes. In part, Rule 23(b)(3) allows for class certification if "the [C]ourt finds that the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3) (emphasis supplied). This is known as the "predominance" requirement.

**B.**

The predominance inquiry considers the relative uniformity of facts and law that will be presented at trial by the members of a proposed class. It is well-settled that common questions do not predominate over individual ones if "the members of a proposed class will need to present evidence that varies from member to member . . . ." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th

Cir. 2005); see also Avritt, 615 F.3d at 1029 (same). If, "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004). Although certification may be proper even if there are some individual inquiries, the predominance analysis helps ensure that a class action does not morph into a series of individual mini-trials. See Walls v. Sagamore Ins. Co., 2009 WL 890528, at * 8 (W.D. Ark. Mar. 31, 2009) (refusing to certify class in part because differing questions of fact and law would result in "a series of individual mini-trials that will dominate the proceedings").

In Amchem Prods., Inc. v. Windsor, the Supreme Court discussed the predominance inquiry in the context of mass tort claims. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). In Amchem, the proposed class included persons (or their family members) who had been exposed to asbestos manufactured by a number of different companies. Id. at 597. The Court noted that such a class would implicate various state laws, various theories of liability, and various types of alleged exposure. Id. at 624-25. Under these circumstances, the Court recognized that mass tort cases often "present significant questions, not only of damages but of liability and defenses of liability . . . affecting the individuals in different ways." Id. at 625 (quoting Advisory Committee Notes). Subsequent courts have repeatedly recognized that Amchem "sharply curtailed the ability to certify a class action pursuant to Rule 23(b)(3) in the mass tort context." Blyden v. Mancusi, 186 F.3d 252, 270 (2nd Cir. 1999).[5]

---

[5] See also In re Human Tissue Prods. Liab. Litig., 2010 WL 743922, at * 2 (D.N.J. Mar. 2, 2010) (recognizing that the "Third Circuit has stated that class certification is inappropriate in mass tort claims because they present questions of individualized issues of liability"); In re Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 396

6

Here, ConAgra's primary argument is that Plaintiffs have failed to satisfy the predominance requirement. See Def's. Suggs. in Opp., p. 10-46; Def.'s Surreply, p. 3-12. The Court agrees. Because the lack of predominance precludes class certification, the Court need not engage in a lengthy discussion of the remaining elements under Rule 23. The following explains why common questions of fact or law do not predominate over individual questions in this case.

### III.

### A.

First, the Court considers factual predominance with respect to the proposed Injury Class. With respect to this class, the Plaintiffs would need to show, among other things, that each individual consumed a pot pie subject to ConAgra's recall, that each individual suffered an injury, and that those injuries were caused by salmonella in ConAgra's pot pie. Under these circumstances, factual predominance is lacking.

By way of example, Plaintiffs acknowledge that "[m]any different kinds of illnesses can cause diarrhea, fever, or abdominal cramps. Determining that Salmonella is the cause of the illness depends on laboratory tests that identify Salmonella in the stools of an infected person . . . ." Compl., ¶ 32. Here, none of the proposed class representatives have a laboratory test that identifies Salmonella in their stools. Def's. Suggs. in Opp., p. 15. In fact, none of the proposed class representatives even saw a doctor before announcement of the recall. Id. Therefore, the Plaintiffs would need to offer evidence, for each proposed class member, that any alleged illness was caused by salmonella in a pot pie manufactured by Defendant. Even if there was such salmonella, the

---

(S.D.N.Y. 2008) (noting that "the class action device typically is not very useful in mass tort cases"); In re Prempro, 230 F.R.D. 555, 566-567 (E.D. Ark. 2005) (recognizing that Amchem "cautioned" against certification of mass product liability cases).

Plaintiffs also acknowledge that salmonella is "easily killed by cooking temperatures," so that transmission may not occur if the food is "thoroughly cooked." Plts.' Suggs. in Support, p. 8. Consequently, ConAgra would likely attempt to establish that some or all of the Plaintiffs failed to properly cook their pot pie before consuming it.

These points would raise a myriad of individualized factual inquiries. What other food or drink did the Plaintiffs consume during the relevant period? Did the Plaintiffs properly cook and/or prepare all edibles during the relevant period? What were each Plaintiffs' alleged symptoms and when did those symptoms begin? Do any Plaintiffs have a history of stomach or other digestive issues that may have caused the alleged symptoms? These are just high-level examples, but they do illustrate that individual inquiries would overtake the common ones. As explained by the Eighth Circuit, if "the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." Avritt, 615 F.3d at 1029 (citations and quotations omitted); see also Dumas v. Albers Med., Inc., 2005 WL 2172030, at * 4 (W.D. Mo. Sept. 7, 2005).

The varying scope of damages also precludes a finding of predominance. As explained by one court, if "individual damages cannot be determined by reference to a mathematical or formulaic calculation, the [dissimilar] damages issue may predominate over any common issues shared by the class." See Steering Comm. v. Exxon Mobil Corp., 461 F.3d 598, 603 (5th Cir. 2006); see also In re Genetically Modified Rice Litig., 251 F.R.D. 392, 398-99 (E.D.Mo. 2008). Here, the Plaintiffs have failed to demonstrate that issues relating to common damages would predominate.

The Plaintiffs seek damages for "bodily injury, resulting in pain and suffering, mental anguish, loss of the capacity for the enjoyment of life, loss of earnings, medical expenses and other economic damages." Compl., at ¶¶ 52, 56. Consequently, the members would need to present

8

evidence of their individual pain and suffering, the particular amount of their lost wages, and their individualized medical bills. Even if this evidence could be presented in a common (and manageable) manner, the reasonableness of those damages would likely be disputed by the parties. Courts have refused to certify classes under similar circumstances. See Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc., 213 F.R.D. 537, 547 (W.D. Mo. 2002) (finding lack of predominance in part because "determining whether an individual class member had suffered damage would require examination of individualized proof and predominates over common issues"), aff'd 339 F.3d 1001 (8th Cir. 2003).

For all these reasons, "[t]he multitude of individualized issues presented in [P]laintiffs' claims would entail complicated mini-litigations within the class action itself." Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 149 (3rd Cir. 2008). The Court therefore holds that factual predominance is lacking in the proposed Injury Class.

**B.**

The Plaintiffs have also not demonstrated that common factual issues would predominate the proposed Consumer Class. This proposed class is primarily predicated on the purchase of a recalled pot pie.[6] Consequently, each putative member of the Consumer Class would at least need to show that he or she purchased a pot pie subject to the recall. This inquiry is far more complicated than it may appear.

There is no "master list" of individuals who purchased a pot pie subject to the recall. As a result, each member would need to present evidence that he or she purchased one or more pot pies

---

[6] To the extent this proposed class would include individuals who also consumed a pot pie, certification would fail for the reasons set forth above.

9

subject to the recall. This would be an extremely individualized inquiry because there are numerous varieties of pot pies, not only manufactured by Defendant, but by others. See Hodes v. Van's Int'l Foods, 2009 WL 2424214, at * 4 (C.D. Cal. July 23, 2009) (finding lack of predominance in part because of individual questions surrounding "*who* purchased Van's frozen waffles during the relevant class period, *which kind* of frozen waffles they purchased, [and] *how many* they purchased . . . .") (emphasis in original); In re Phenylpropanolamine Prods. Liab. Litig., 214 F.R.D. 614, 618 (W.D. Wash. 2003) (recognizing that "[p]utative class members would be asked to distinguish, now over two years after the fact, between defendants' various products and various formulations of those products"). It is also highly likely that only a few–if any–putative members retained tangible evidence of their purchase (i.e., a receipt or the actual pot pie); consequently, this class is also problematic because it would be based on "the vagaries of memory." Id. These points all weigh heavily against a finding of factual predominance.

Much like the Injury Class, the Consumer Class also presents varying damages issues. The recovery for a defective pot pie would depend (at least in part) on the purchase price. That purchase price would likely vary among members. By way of example, some members may have used a coupon to purchase their pot pies. The purchase price for other members may also vary among different stores, cities, states, or regions. See In re ConAgra Peanut Butter Prods. Liab. Litig., 251 F.R.D. 689, 699 (N.D. Ga. 2008) (recognizing that "[i]t is impermissible . . . to determine damages on a class-wide basis in order to facilitate class treatment of a case where the governing law requires individual proof of damages").

10

For all these reasons, the Court holds that factual predominance is lacking with respect to the Consumer Class.

## IV.

### A.

The lack of factual predominance does not necessarily defeat certification if common legal issues predominate. Coley v. Clinton, 635 F.2d 1364, 1378 (8th Cir. 1980) (stating that "factual differences are not fatal (to maintenance of a class action) if common questions of law exist") (citations and quotations omitted). Here, the Plaintiffs' proposed classes are nationwide and assert common-law state claims. See Compl. (Counts I-V). The posture of this case thus implicates significant choice-of-law issues.

Rule 23 "makes no reference to choice-of-law issues, but, in nationwide class actions, choice-of-law constraints are constitutionally mandated because a party has a right to have her claims governed by the state law applicable to her particular case." In re Prempro, 230 F.R.D. at 562 (citations omitted); see also Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 823 (1985). Consequently, "an individualized choice-of-law analysis must be applied to each plaintiff's claim in a class action." In re St. Jude Med., Inc., 425 F.3d 1116, 1120 (8th Cir. 2005). If there is a conflict between state laws that could apply to a claim, a state's substantive law "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13 (1981).

The result of this choice-of-law analysis may be dispositive; "[n]o class action is proper unless all litigants are governed by the same legal rules." In re Bridgestone/Firestone, Inc., 288 F.3d

11

1012, 1015 (7th Cir. 2002). Indeed, "[i]f more than a few of the laws of the fifty states differ, [courts] would face an impossible task of instructing a jury on the relevant law, making class certification inappropriate." Foster v. St. Jude Med., Inc., 229 F.R.D. 599, 605 (D. Minn. 2005) (citations and quotations omitted). The party seeking class certification bears the "burden of providing an extensive analysis of state law variations to determine whether there are insuperable obstacles to class certification." Id.

Here, the Plaintiffs argue that a choice of law analysis is not necessary (and thus, legal issues predominate) because Missouri law should apply to all claims and parties.[7] See Plts.' Reply, p. 8-9. In support of this argument, Plaintiffs state that "Missouri is the center of this litigation . . .[a]ll of the recalled pot pies at issue . . . were manufactured at the Marshall, Missouri plant. ConAgra voluntarily chose to not only do business in Missouri, but also specifically decided to operate its manufacturing plant in Missouri. Therefore, ConAgra has every expectation to be held liable under the substantive laws of the State of Missouri." Id. at p. 8.

This argument fails for at least three reasons. First, a similar argument was rejected in In re St. Jude, Inc., 425 F.3d at 1120-1121. In that case, the Eighth Circuit held that a choice-of-law analysis was required even though the defendant was headquartered in the forum state and even though the alleged conduct occurred in that state. Id. at 1119-1120.

Second, the Plaintiffs focus exclusively on ConAgra's expectation of applicable law even though the expectations of the potential class members must also be considered. "[P]rotection of

---

[7] Despite requesting a nationwide class, the Plaintiffs' opening brief did not meaningfully address choice-of-law issues. Consequently, the Court finds that Plaintiffs waived this issue by raising it for the first time in their reply brief. See In Re Aquila ERISA Litig., 237 F.R.D. at 213 (finding that the moving party "abandoned a [Rule 23(b)(3)] theory for certification as they failed to brief it in their memorandum in support of their motion for class certification"). Even if Plaintiffs had adequately raised their choice-of-law argument, it is rejected for the reasons set forth below.

out-of-state parties' constitutional rights requires an inquiry into their claims' contacts with [the forum state] and their individual state law before" determining which law will apply. Id. at 1120; see also In re Vioxx Prods. Liab. Litig., 239 F.R.D. 450, 457-458 (E.D. La. 2006) (holding that the law of "each plaintiff's home jurisdiction" should apply in part because "it is highly unlikely that a plaintiff residing outside of New Jersey could have reasonably expected that his or her personal injury claims would be governed by New Jersey law").

Here, none of the proposed class representatives are residents of Missouri. Compl. at ¶¶ 2-7 (alleging that the residency of the proposed class representatives include Maine, Kansas, and Tennessee). The Plaintiffs have not offered adequate support for the proposition that non-resident members would have expected Missouri law to apply to their claims. Indeed, there is nothing to suggest that any members had meaningful contacts with Missouri. Additionally, it appears that the vast majority of putative members purchased and/or consumed their pot pies outside of Missouri. Therefore, any injury would have occurred outside of Missouri, the parties' relationship would be centered where the purchase and consumption occurred, and the non-forum states each have their own significant interest in protecting their residents. See In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig., 2006 WL 3754823, at * 2 (N.D. Ill. Dec. 18, 2006). For these reasons, the Plaintiffs have failed to demonstrate that the putative class members would expect Missouri law to apply, or that the exclusive application of Missouri law would be fair.

The Plaintiffs offer a corollary argument that if putative members "prefer application of another state's laws, they can simply opt out of this action at the appropriate time." Plts.' Reply, p. 9. In support of that argument, the Plaintiffs cite Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985). Shutts, however, does not help Plaintiffs. In Shutts, the Court afforded "little credence to

13

the idea that [the forum's] law should apply to all claims" simply because putative members had the opportunity to opt-out. Shutts, 472 U.S. at 820; see also New Piper Aircraft, Inc., 209 F.R.D. 221, 229 (S.D. Fla. 2002).

Third, this Court follows Missouri's choice-of-law rules to determine the governing state law. Stricker v. Union Planters Bank, N.A., 436 F.3d 875, 877-88 (8th Cir. 2006). In tort and contract actions, Missouri applies the most significant relationship test. Horn v. B.A.S.S., 92 F.3d 609, 611 (8th Cir. 1996). The most significant relationship test carries "a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state based on the factors articulated in section 6" of the Restatement (Second) of Conflict of Laws. Wolfley v. Solectron USA, Inc., 541 F.3d 819, 823 (8th Cir. 2008).[8] As discussed above, the Plaintiffs have not offered sufficient support to defeat that presumption, or for the uniform application of Missouri law. Consequently, in this putative class action, the law of the state where each member resides would be applicable in this action. See id.; see also In re Grand Theft Auto Video Game Consumer Litig., 251 F.R.D. 139, 146 (S.D.N.Y. 2008) (recognizing that "several courts have determined that the law of the state where each plaintiff resides and purchased the relevant product should apply").

The application of various state laws, however, does not necessarily defeat class certification. The issue becomes whether there is a conflict among the potential state law. See In re Bridgestone/Firestone, 288 F.3d at 1015-18 (recognizing predominance may not be met if the

---

[8] The factors under section 6 are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied. Id.

14

applicable "legal rules" materially differ among the states). On this point, ConAgra has presented a significant amount of authority which demonstrates that "variations in state law . . . swamp any common issues and defeat predominance." Casa Orlando Apts., Ltd. v. Federal Nat'l. Mortg. Ass'n, 624 F.3d 185, 194 (5th Cir. 2010) (citations and quotations omitted); Def's. Suggs. in Opp., p. 30-34, 39-46, Def's. Ex. 16. These variations are discussed below.

**B.**

Count I of the Complaint attempts to state a claim for strict liability. Some states do not recognize strict liability claims. See Branham v. Ford Motor Co., 701 S.E.2d 5, 15 n.11 (S.C. 2010) (stating that "[f]our states do not recognize strict liability claims at all."); Defs.' Ex. 16. Others do not recognize strict liability in the products liability context. See Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 374 S.E.2d 55, 57 n.4 (Va. 1988) (recognizing that Virginia "does not permit tort recovery on a strict-liability theory in products-liability cases").

Count II attempts to state a claim for negligence. A number of states have statutes that preempt common law negligence claims. See, e.g., Walters v. Howmedica Osteonics Corp., 676 F. Supp. 2d 44, 48 (D. Conn. 2009) (recognizing that the Connecticut Product Liability Act "bars separate common law causes of action in product liability cases"); Ingram v. Bayer Corp., 2002 WL 1163613, at * 2 (E.D. La. May 30, 2002) (dismissing claims for negligence, strict liability, and other claims because the Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damages caused by their products"). ConAgra further notes other differences in strict liability and negligence law, such as differing presumptions and burdens of proof among state law. Def's. Suggs. in Opp., p. 32 (discussing differences in Colorado, Kentucky, and North Dakota state law).

15

State law also varies on Plaintiffs' breach of implied warranty claim (Count III). As one court recognized, "numerous variations exist among states' laws concerning the scope and application of implied warranty claims . . . state law also varies on related issues such as vertical privity requirements, contractual limitations of implied warranties, limitations on plaintiffs' remedies and affirmative defenses available to the defendant." Walsh v. Ford Motor Co., 130 F.R.D. 260, 271 (D.D.C. 1990); see also Cole v. General Motors Corp., 484 F.3d 717, 726 (5th Cir. 2007) (stating that "there are numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions").

States also have differing iterations of Plaintiffs' Count IV for negligence per se. Some states simply reject the negligence per se doctrine regardless of the statute allegedly violated. See In re Derailment Cases, 416 F.3d 787, 795 (8th Cir. 2005) (recognizing that "the violation of a regulation or statute is generally not recognized as negligence per se under Nebraska law"). Although other states recognize a claim for negligence per se, the Plaintiffs' negligence per se claim is predicated in part on ConAgra's alleged violation of the Federal Food, Drug and Cosmetic Act ("FDCA"). See Compl., at ¶¶ 67-70. As recognized by the Eleventh Circuit, however, "[t]here is a split of authority among the states as to whether a violation of the FDCA or its regulations can serve as a predicate for a negligence per se claim under state law." Ellis v. C.R. Bard, Inc., 311 F.3d 1272, 1284 n.9 (11th Cir. 2002) (comparing cases).

Perhaps the greatest discrepancy in state law is found in Plaintiffs' claim for unjust enrichment (Count V).[9] Courts have repeatedly recognized "that the law of unjust enrichment varies

---

[9] Notably, the Plaintiffs appear to seek certification of the Consumer Class on only their unjust enrichment claim. See Plts.' Suggs. in Support, p. 2.

16

Case 4:07-cv-00770-DW   Document 70   Filed 01/04/11   Page 16 of 19

State law also varies on Plaintiffs' breach of implied warranty claim (Count III). As one court recognized, "numerous variations exist among states' laws concerning the scope and application of implied warranty claims . . . state law also varies on related issues such as vertical privity requirements, contractual limitations of implied warranties, limitations on plaintiffs' remedies and affirmative defenses available to the defendant." Walsh v. Ford Motor Co., 130 F.R.D. 260, 271 (D.D.C. 1990); see also Cole v. General Motors Corp., 484 F.3d 717, 726 (5th Cir. 2007) (stating that "there are numerous variations in the substantive laws of express and implied warranty among the fifty-one jurisdictions").

States also have differing iterations of Plaintiffs' Count IV for negligence per se. Some states simply reject the negligence per se doctrine regardless of the statute allegedly violated. See In re Derailment Cases, 416 F.3d 787, 795 (8th Cir. 2005) (recognizing that "the violation of a regulation or statute is generally not recognized as negligence per se under Nebraska law"). Although other states recognize a claim for negligence per se, the Plaintiffs' negligence per se claim is predicated in part on ConAgra's alleged violation of the Federal Food, Drug and Cosmetic Act ("FDCA"). See Compl., at ¶¶ 67-70. As recognized by the Eleventh Circuit, however, "[t]here is a split of authority among the states as to whether a violation of the FDCA or its regulations can serve as a predicate for a negligence per se claim under state law." Ellis v. C.R. Bard, Inc., 311 F.3d 1272, 1284 n.9 (11th Cir. 2002) (comparing cases).

Perhaps the greatest discrepancy in state law is found in Plaintiffs' claim for unjust enrichment (Count V).[9] Courts have repeatedly recognized "that the law of unjust enrichment varies

---

[9] Notably, the Plaintiffs appear to seek certification of the Consumer Class on only their unjust enrichment claim. See Plts.' Suggs. in Support, p. 2.

materially from state to state." Tyler v. Alltel Corp., 265 F.R.D. 415, 422 (E.D. Ark. Feb. 23, 2010); see also In re Sears, Roebuck & Co., 2006 WL 3754823, at * 1 (recognizing that "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states"). As a fundamental matter, states vary on the number of elements that must be met to establish an unjust enrichment claim. Some states require a showing of five elements, while other states vary from one to four elements. See In re ConAgra Peanut Butter, 251 F.R.D. at 697 (citing cases). Other differences abound, including that some states bar an unjust enrichment claim unless the plaintiff confers a direct benefit upon the defendant. See id. ConAgra argues (without dispute from the Plaintiffs) that at least eleven states and the District of Columbia impose this "direct benefit" requirement. That is an important legal distinction in this case because there is no evidence that any Plaintiff purchased a pot pie directly from ConAgra; instead, the Plaintiffs indirectly conferred a benefit on ConAgra by purchasing the pot pies from a retailer.

For all these reasons, common questions of law do not come close to predominating over individual questions of law. Consequently, the Court will not certify either class.

## V.

As an alternative to global class certification, the Plaintiffs request that the Court certify common issues for class certification under Federal Rule 23(c)(4).[10] Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Courts have debated whether issue certification is appropriate even if Rule 23(a)

---

[10] The Plaintiffs only summarily raised their request for issue certification in the "Conclusion" section of their opening brief. See Plts.' Suggs. in Support, p. 36. Consequently, the Court finds that Plaintiffs waived this issue by failing to meaningfully address it in their opening brief. See In Re Aquila ERISA Litig., 237 F.R.D. at 213. Even if Plaintiffs had adequately raised issue certification, it would have been rejected for the reasons set forth below.

and (b) are not satisfied. That said, the Eighth Circuit has recognized that issue certification may not be appropriate if judicial economy would be impeded by having to resolve many individual issues. See In re St. Jude Med., Inc., 522 F.3d 836, 841 (8th Cir. 2008).

Here, and for the reasons set forth throughout, the Court finds that issue certification would not be appropriate. Issue certification would implicate the same individualized inquiries identified above, and would hardly be conducive to judicial economy. In rejecting certification of an "issues class," one court astutely recognized that:

> It would be possible to have a common issues trial on the issue of, for example, 'Can eating peanut butter that is contaminated with the bacteria listed above cause illness?' But why bother having a trial on issues of such abstract generality? On the other hand, a class trial of issues such as what the Defendant knew or should have known and the adequacy of its general plant sanitation practices in relation to the onset of illness for thousands of people would require special interrogatories and a verdict form of unimaginable complexity.

In re ConAgra Peanut Butter, 251 F.R.D. at 702. The Court agrees, and denies Plaintiffs' request for Rule 23(c)(4) certification.

## VI.

For the reasons set forth above, it is hereby

ORDERED that the Plaintiffs' Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23 (Doc. 46) is DENIED; it is further

18

ORDERED that Defendant's Motion for Leave to Submit Supplemental Authority (Doc. 68) is GRANTED.

IT IS SO ORDERED.

Date: January 4, 2011              /s/ Dean Whipple
                                   Dean Whipple
                                   United States District Judge